UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:16-CV-00064-FDW

| | | |
|---|---|---|
| DOTTY CHEEK,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>Defendant. | ) | ORDER |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 19). For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS Defendant's Motion for Summary Judgment, and AFFIRMS the Commissioner's decision.

## I. BACKGROUND

Plaintiff filed an application for Supplemental Security Income Benefits under Title XVI of 42 U.S.C. § 1383, on December 10, 2010, alleging disability onset date of September 3, 2010. (Tr. 291.) The claim was initially denied by the Social Security Administration on April 8, 2011, (Tr. 162-165), and again on November 21, 2012. (Tr. 141-54.) Plaintiff timely requested a hearing, which was held on June 2, 2014, by an Administrative Law Judge ("ALJ"). (Tr. 32.)

On December 4, 2014, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-26.) Specifically, the ALJ determined Plaintiff had not engaged in any substantial gainful

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action is necessary to continue this suit. *See* 42 U.S.C. §405(g).

activity since November 18, 2010 (Tr. 13), and that she had the following severe impairments: status post craniotomy due to brain mass, headaches, chronic back and hip arthralgias, degenerative disc disease, cervical spine, decreased hearing of the left ear, alleged cognitive issues, depression, anxiety, status post right carpal tunnel release, double vision, left congenital nerve palsy and obesity. (Tr. 13-14.) The ALJ reviewed the listed impairments and found none of the conditions, standing alone or in combination, met the requirements for any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.)

The ALJ found Plaintiff's Residual Functional Capacity ("RFC") would allow her to perform light work, except that she would be limited to:

> frequent handling, fingering; occasional climbing of ramps and stairs; occasional balancing, stooping, crouching, crawling, and kneeling; no climbing ladders, ropes, or scaffolds; occasional fine hearing; frequent near acuity; no more than moderate exposure to noise; no driving an automobile for completion of job tasks; performing simple routine repetitive tasks; no contact with the public; occasional contact with co-workers and supervisors; routine changes; and non-production oriented.

(Tr. 17.) While these restrictions precluded Plaintiff from resuming her past relevant work, the ALJ found there were other forms of work Plaintiff could perform, taking into consideration her age, education, work experience, and RFC. (Tr. 24-25.) Accordingly, the ALJ ruled that Plaintiff was not disabled. (Tr. 26.) Plaintiff requested review by an Appeals Council (Tr. 1), which denied Plaintiff's request. (Id.) Plaintiff then timely filed this action seeking judicial review.

## II. STANDARD OF REVIEW

Disability for the purposes of the Social Security Administration is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505(a). To determine disability, the Commission uses a five step sequential

evaluation process. 20 C.F.R. § 404.1520(a)(4). First, the Commission considers whether the claimant is performing "substantial gainful activity." Id. Second, if the claimant is not participating in "substantial gainful activity," the Commission considers the medical severity of the claimant's impairment(s). Id. The claimant must have a medical impairment, or combination of impairments, that is severe and meets the duration requirements. Id. (citing 20 C.F.R. § 404.1509). Third, if the Commission determines the claimant's impairment meets the requirements of one of the Social Security listings as well as the duration requirements of 20 C.F.R. § 404.1520(a)(4), the claimant will be considered disabled. Id. Otherwise, the Commission moves to the fourth step: assessing the claimant's RFC to determine if the claimant is disabled from his past type of employment. Id. If the claimant is unable to perform his past relevant work, the Commission's fifth step is to determine whether, based on the claimant's RFC, age, education, and work experience, the claimant is able to make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). If so, the claimant will be determined to be not disabled. 20 C.F.R. § 404.1560(c).

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner of Social Security to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g) (2006); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). The scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.

Craig v. Chater, 76 F.3d. 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir.1986).

The Fourth Circuit has long emphasized it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. This is true even if the reviewing court disagrees with the outcome, so long as there is substantial evidence in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. ANALYSIS

Plaintiff raises three assignments of error with this Court, arguing that: (1) the ALJ failed to conduct a function-by-function analysis when assessing Plaintiff's RFC; (2) the ALJ failed to discuss Plaintiff's ability to stay on task for a full workday or attend work consistently through the work week; and (3) new and material evidence from Plaintiff's neurologist warrants a remand. (Doc. No. 12, p. 7). The Court disagrees with Plaintiff's arguments for the reasons stated below.

### A. The ALJ properly conducted a function-by-function analysis in assessing Plaintiff's RFC

Plaintiff argues the ALJ failed to conduct a function-by-function analysis when it determined Plaintiff's RFC. An ALJ is solely responsible for assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making RFC assessments, the ALJ must consider the functional limitations resulting from Plaintiff's medically determinable impairments by following a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b) 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). Second, the ALJ must evaluate "the intensity and persistence of the claimant's

pain, and the extent to which it affects [her] ability to work." Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1)). This evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. at 595 (citations omitted). Plaintiff has the burden, however, of establishing her RFC by demonstrating how her impairment impacts her functioning. See 20 C.F.R. §§ 404.1512(c), 416.912(c).

Here, Plaintiff argues that in assessing her RFC, (i) the ALJ did not properly consider Plaintiff's own subjective complaints regarding her diplopia and headaches, (ii) the ALJ mischaracterized Dr. Bailey's statement regarding Plaintiff's headaches, and (iii) the ALJ's decision contained a discrepancy in its 2012 and 2014 findings regarding Plaintiff's visual acuity.

**i. The ALJ properly considered Plaintiff's subjective complaints.**

The ALJ properly concluded that Plaintiff's subjective complaints were not credible because the complaints were not supported by objective medical evidence. The ALJ provided a sufficient explanation as to why Plaintiff's subjective complaints were not credible. Specifically, the ALJ found that none of Plaintiff's treating physicians imposed functional restrictions on her and all of Plaintiff's physicians prescribed conservative treatment. The ALJ considered all of Plaintiff's symptoms and their consistency with objective medical evidence as well as opinion evidence in accordance with the requirements of 20 C.F.R. §§ 416.927 and 416.929. For example, the ALJ's analysis included treatment notes from Hugh Chatham Memorial Hospital and Wake Forest University Baptist Medical Center, Dr. Richard Pallazza's mental status examination, Dr. Janakiram Setty's physical evaluation, Dr. Bailey's treatment records, Dr. McKinnon's visual

acuity evaluation, Dr. Frank Virgili's opinion, Dr. Betron Haywood's opinion, and Dr. Wilson's medical evaluation. (Tr. 18-24.) The ALJ gave partial weight to the opinions of Dr. Pallazza, Dr. Virgili, Dr. Herrera, and Dr. Aldridge because their assessments were consistent or generally consistent with the medical evidence of record. (Tr. 20-23.) The ALJ found that all of Plaintiff's objective medical evidence was generally unremarkable, which was inconsistent with Plaintiff's subjective complaints.

Plaintiff contends Dr. Setty's findings of Plaintiff's abnormal tandem gait and positive Romberg as well as Dr. Wilson's statement that Plaintiff's nerve dysfunction is a residual effect of the tumor and no treatment will improve the condition are inconsistent with the ALJ's findings (Doc. No. 12, p. 12); however, as the ALJ found, neither Dr. Setty nor Dr. Wilson imposed limitations on Plaintiff's daily functioning, which supports its findings. Additionally, the ALJ gave little weight to Dr. Setty's opinion because it was inconsistent with and not supported by the overall evidence of record, including Dr. Setty's own findings showing that Plaintiff's physical examinations were unremarkable. (Tr. 21.) Therefore, substantial evidence supports the ALJ's findings, and this Court may not reweigh the evidence.

**ii. Plaintiff fails to show the ALJ erred by noting Dr. Bailey's statements regarding Plaintiff's headaches.**

Plaintiff also argues the ALJ mischaracterized Dr. Bailey's assessment that "[Plaintiff] most likely has a component of analgesic rebound headache because she is taking multiple doses of over the counter medications every day whether or not she has a headache." (Tr. 613.) The ALJ noted objective test results from February 1, 2011; September 1, 2011; September 4, 2012; and November 19, 2013, on Plaintiff's head were unremarkable, suggesting no residual or recurrent disease. The ALJ then noted, "[Plaintiff's] reported headaches were most likely analgesic rebound headaches from taking over the counter medications on a daily basis." (Tr. 21.)

Plaintiff contends the ALJ's characterization of Dr. Bailey's statement incorrectly implies that "most if not all" of Plaintiff's headaches were analgesic rebound headaches when Dr. Bailey's statement actually implies that only "some" of Plaintiff's headaches could be related to her analgesic use. (Doc. No. 12, p. 19-20.) Plaintiff further argues Dr. Bailey's statement in no way suggests Plaintiff does not have a severe headache disorder independent of her analgesic use.

Even if Dr. Bailey's statement referred to "some" and not "all" of Plaintiff's headaches, this statement alone does not suggest an additional disorder, and there is no objective medical evidence of one. This absence of substantive evidence does not disprove the objective medical evidence that Plaintiff's functioning was unremarkable. Furthermore, despite Plaintiff's lack of objective evidence, the ALJ did not discount her allegations when it considered her status post craniotomy and limited her to light work with additional limitations. (Tr. 22.) Accordingly, Plaintiff failed to show the ALJ erred by finding Dr. Bailey's statement does not suggest an additional disorder caused Plaintiff's headaches.

**iii. The ALJ properly addressed the discrepancy in Plaintiff's visual acuity.**

Plaintiff contends the ALJ improperly found that Plaintiff was limited to "frequent near acuity" as opposed to "occasional fine acuity."[2] (Doc. No. 12, p. 13). As the ALJ explained, the record demonstrates Plaintiff's eye examinations were normal or generally normal, and Dr. McKinnon's examination is the only evidence supporting Plaintiff's subjective complaints of ongoing residual functional limitations. Though Dr. McKinnon's examination noted Plaintiff had

---

[2] In 2012, the ALJ limited Plaintiff to "occasional fine acuity" because the only evidence on record regarding Plaintiff's visual acuity was Plaintiff's testimony that her doctor told her he accidentally cut a nerve during her craniotomy surgery, causing visual disturbances. (Tr. 150-151.) Upon remand in 2014, the ALJ adjusted Plaintiff's RFC to "fine visual acuity" after considering the Plaintiff's diagnoses of diplopia and left congenital nerve palsy. (Tr. 21.)

to basically hold onto the wall when approaching the chair and that Plaintiff complained of trouble standing and turning, the ALJ noted that Dr. McKinnon's opinion contradicted other medical records showing her "gait, routine and tandem, were normal." Therefore, substantial evidence supports the ALJ's findings regarding Plaintiff's visual acuity, and this Court may not reweigh the evidence.

Because substantial evidence in the record supports the ALJ's decision, and because Plaintiff fails to show that she had greater RFC limitations than the ALJ assessed, this Court sees no reason to remand based on a failure to conduct a function by function analysis.

**B. The ALJ properly assessed Plaintiff's ability to stay on task.**

Plaintiff argues the ALJ erred by failing to evaluate Plaintiff's ability to stay on task for a full workday. (Doc. No. 12, p. 17). In support of the ALJ's conclusion that Plaintiff's ability to stay on task was adequate, the ALJ addressed Dr. Pallazza's findings and treatment at Wake Forest University Baptist Medical Center, which both included normal findings of adequate attention span and concentration, as well as examinations at Hugh Chatham and Wake Forrest University Hospital, each of which found Plaintiff had generally normal functioning. (Tr. 583.) Although Dr. Wilson did suggest Plaintiff avoid driving until seen by an ophthalmologist, his findings were all normal, he imposed no additional physical or mental limitations, and he further stated that "[Plaintiff] has no objective findings to correlate with her subjective symptoms." (Tr. 465.)

Plaintiff, on the other hand, cites only to her own subjective complaints, MRI results showing a mild persistent deformity, and Dr. Wilson's November 19, 2013, statement reiterating Plaintiff's complaints. (Doc. No. 12, p. 17). Plaintiff's subjective complaints, however, are insufficient to establish the ALJ's decision was not supported by substantial evidence, and Plaintiff

fails to show that she had greater attention or concentration limitations than were assessed by the ALJ.

**C. New Evidence does not necessitate remand.**

Plaintiff contends neurologist Dr. Benjamin Mark Hoffman's statement, which identifies the correlation between Plaintiff's residual symptoms and her left cerebellar degeneration, is new and material evidence that necessitates reversal and remand of the ALJ's decision. (Doc. No. 12, p. 19). Plaintiff argues this is new and material evidence because it identifies the causation of her headaches. A reviewing court may remand a Social Security case on the basis of newly discovered evidence if Plaintiff establishes four prerequisites. Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985). First, the evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). Second, it must be material to the extent the Secretary's decision "might reasonably have been different" had the new evidence been before her. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980). Third, there must be good cause for the claimant's failure to submit the evidence when the claim was before the Secretary. 42 U.S.C. § 405(g). And fourth, the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. King, 599 F.2d at 599.

Here, Dr. Hoffman's statement may be new, but it is not material. The statement merely provides a new theory as to the causation of Plaintiff's headaches, which is immaterial to the functional limitations imposed by her headaches. While Plaintiff is correct that Dr. Hoffman's statement is consistent with Plaintiff's treatment records, it does not contradict the consistent record evidence the ALJ relied upon to support its decision. Furthermore, Dr. Hoffman's assessment does not include any additional limitations to Plaintiff's functioning not addressed in

the ALJ's RFC findings. Therefore, it is reasonable that the ALJ would have reached the same decision had the new evidence been before it. Accordingly, because the new evidence is not material, remand is not warranted.

## IV. CONCLUSION

IT IS, THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 19) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 19, 2017

Frank D. Whitney
Chief United States District Judge